FILED _____ ENTERED
LOGGED _____ RECEIVED

OCT 0 1 2019

AT BALTIMORE
CLERK, U.S. DISTRICT COURT
DISTRICT OF MARYLAND

BY _____ DEPUTY

**U.S. Department of Justice**

*United States Attorney*
*District of Maryland*

---

*Daniel A. Loveland, Jr.*
*Assistant United States Attorney*
*Daniel.Loveland2@usdoj.gov*

*Suite 400*
*36 S. Charles Street*
*Baltimore, MD 21201-3119*

*DIRECT: 410-209-4973*
*MAIN: 410-209-4800*
*FAX: 410-962-3091*

August 2, 2019

Brendan Hurson
Office of the Federal Defender
100 South Charles Street
Tower II, Ninth Floor
Baltimore, Maryland 21201
Brendan_Hurson@fd.org

## *VIA E-MAIL*

Re:     *United States v. Mark David Franklin*, CCB-18-528

Dear Counsel:

This letter, together with the Sealed Supplement, confirms the plea agreement (this "Agreement") that has been offered to your client, Mark David Franklin (hereinafter "Defendant"), by the United States Attorney's Office for the District of Maryland ("this Office" or "the Government"). If the Defendant accepts this offer, please have the Defendant execute it in the spaces provided below. If this offer has not been accepted by **August 23, 2019**, it will be deemed withdrawn. The terms of the Agreement are as follows:

### Offense of Conviction

1.      The Defendant agrees to waive indictment and plead guilty to a one-count Information, which charges the Defendant with Attempted Possession of Child Pornography, in violation of 18 U.S.C. §§ 2252A(a)(5)(B), 2252(b)(2), 2256(8)(A). The Defendant admits that the Defendant is, in fact, guilty of the offense and will so advise the Court.

### Elements of the Offense

2.      The elements of the offense to which the Defendant has agreed to plead guilty, and which this Office would prove if the case went to trial, are as follows: That on or about the dates alleged in the Information, in the District of Maryland, the Defendant attempted to,

   a. Knowingly possess any matter that contained an image of child pornography as defined in 18 U.S.C. § 2256(8);

b. That such child pornography had been transported in interstate and foreign commerce by any means, including by computer, and that such child pornography had been produced using materials that had been mailed or shipped or transported in interstate and foreign commerce by any means, including by computer or cellular device; and

c. the Defendant knew that such matter constituted child pornography.

## Penalties

3.    The maximum penalties provided by statute for the offense to which the Defendant is pleading guilty are as follows:

| Count | Statute | Maximum Prison | Supervised Release | Maximum Fine | Special Assessment |
|-------|---------|----------------|--------------------|--------------|--------------------|
| 1 | 18 U.S.C. § 2252A(a)(5)(B) | 10 years | 3 years | $250,000 | $100/$5,000 (18 U.S.C. § 3014) |

a.    Prison: If the Court orders a term of imprisonment, the Bureau of Prisons has sole discretion to designate the institution at which it will be served.

b.    Supervised Release: If the Court orders a term of supervised release, and the Defendant violates the conditions of supervised release, the Court may order the Defendant returned to custody to serve a term of imprisonment as permitted by statute, followed by an additional term of supervised release.

c.    Restitution: The Court may order the Defendant to pay restitution pursuant to 18 U.S.C. §§ 3663, 3663A, 3664, and 2259.

d.    Payment: If a fine or restitution is imposed, it shall be payable immediately, unless the Court orders otherwise under 18 U.S.C. § 3572(d). The Defendant may be required to pay interest if the fine is not paid when due.

e.    Forfeiture: The Court may enter an order of forfeiture of assets directly traceable to the offense, substitute assets, and/or a money judgment equal to the value of the property subject to forfeiture.

f.    Collection of Debts: If the Court imposes a fine or restitution, this Office's Financial Litigation Unit will be responsible for collecting the debt. If the Court establishes a schedule of payments, the Defendant agrees that: (1) the full amount of the fine or restitution is nonetheless due and owing immediately; (2) the schedule of payments is merely a minimum schedule of payments and not the only method, nor a limitation on the methods, available to the United States to enforce the judgment; and (3) the United States may fully employ all powers to collect on the total amount of the debt as provided by law. Until the debt is paid, the Defendant

Rev. August 2018

2

agrees to disclose all assets in which the Defendant has any interest or over which the Defendant exercises direct or indirect control. Until the money judgment is satisfied, the Defendant authorizes this Office to obtain a credit report in order to evaluate the Defendant's ability to pay, and to request and review the Defendant's federal and state income tax returns. The Defendant agrees to complete and sign a copy of IRS Form 8821 (relating to the voluntary disclosure of federal tax return information) and a financial statement in a form provided by this Office.

## Sex Offender Registration

4.     The Defendant understands and agrees that, as a consequence of the Defendant's conviction for the crimes to which the Defendant is pleading guilty, the Defendant will be required to register as a sex offender in the place where the Defendant resides, is an employee, and is a student, pursuant to the Sex Offender Registration and Notification Act (SORNA), and the laws of the state of the Defendant's residence. Failure to do so may subject the Defendant to new charges pursuant to 18 U.S.C. § 2250.

## Waiver of Rights

5.     The Defendant understands that by entering into this Agreement, the Defendant surrenders certain rights as outlined below:

a.     If the Defendant had pleaded not guilty and persisted in that plea, the Defendant would have had the right to a speedy jury trial with the close assistance of competent counsel. That trial could be conducted by a judge, without a jury, if the Defendant, this Office, and the Court all agreed.

b.     The Defendant has the right to have his case presented to a Grand Jury, which would decide whether there is probable cause to return an indictment against him. By agreeing to proceed by way of Information, he is giving up that right, and understands that the charges will be filed by the United States Attorney without the Grand Jury.

c.     If the Defendant elected a jury trial, the jury would be composed of twelve individuals selected from the community. Counsel and the Defendant would have the opportunity to challenge prospective jurors who demonstrated bias or who were otherwise unqualified, and would have the opportunity to strike a certain number of jurors peremptorily. All twelve jurors would have to agree unanimously before the Defendant could be found guilty of any count. The jury would be instructed that the Defendant was presumed to be innocent, and that presumption could be overcome only by proof beyond a reasonable doubt.

d.     If the Defendant went to trial, the Government would have the burden of proving the Defendant guilty beyond a reasonable doubt. The Defendant would have the right to confront and cross-examine the Government's witnesses. The Defendant would not have to present any defense witnesses or evidence whatsoever. If the Defendant wanted to call witnesses in defense, however, the Defendant would have the subpoena power of the Court to compel the witnesses to attend.

e. The Defendant would have the right to testify in the Defendant's own defense if the Defendant so chose, and the Defendant would have the right to refuse to testify. If the Defendant chose not to testify, the Court could instruct the jury that they could not draw any adverse inference from the Defendant's decision not to testify.

f. If the Defendant were found guilty after a trial, the Defendant would have the right to appeal the verdict and the Court's pretrial and trial decisions on the admissibility of evidence to see if any errors were committed which would require a new trial or dismissal of the charges. By pleading guilty, the Defendant knowingly gives up the right to appeal the verdict and the Court's decisions.

g. By pleading guilty, the Defendant will be giving up all of these rights, except the right, under the limited circumstances set forth in the "Waiver of Appeal" paragraph below, to appeal the sentence. By pleading guilty, the Defendant understands that the Defendant may have to answer the Court's questions both about the rights being given up and about the facts of the case. Any statements that the Defendant makes during such a hearing would not be admissible against the Defendant during a trial except in a criminal proceeding for perjury or false statement.

h. If the Court accepts the Defendant's plea of guilty, the Defendant will be giving up the right to file and have the Court rule on pretrial motions, and there will be no further trial or proceeding of any kind in the above-referenced criminal case, and the Court will find the Defendant guilty.

i. By pleading guilty, the Defendant will also be giving up certain valuable civil rights and may be subject to deportation or other loss of immigration status, including possible denaturalization. The Defendant recognizes that if the Defendant is not a citizen of the United States, or is a naturalized citizen, pleading guilty may have consequences with respect to the Defendant's immigration status. Under federal law, conviction for a broad range of crimes can lead to adverse immigration consequences, including automatic removal from the United States. Removal and other immigration consequences are the subject of a separate proceeding, however, and the Defendant understands that no one, including the Defendant's attorney or the Court, can predict with certainty the effect of a conviction on immigration status. The Defendant is not relying on any promise or belief about the immigration consequences of pleading guilty. The Defendant nevertheless affirms that the Defendant wants to plead guilty regardless of any potential immigration consequences.

## Advisory Sentencing Guidelines Apply

6. The Defendant understands that the Court will determine a sentencing guidelines range for this case (henceforth the "advisory guidelines range") pursuant to the Sentencing Reform Act of 1984 at 18 U.S.C. § 3551-3742 (excepting 18 U.S.C. § 3553(b)(1) and 3742(e)) and 28 U.S.C. §§ 991 through 998. The Defendant further understands that the Court will impose a sentence pursuant to the Sentencing Reform Act, as excised, and must take into account the advisory guidelines range in establishing a reasonable sentence.

Rev. August 2018

4

### Factual and Advisory Guidelines Stipulation

7. This Office and the Defendant stipulate and agree to the Statement of Facts set forth in Attachment A, which is incorporated by reference herein.

a. This Office and the Defendant further agree that the **applicable base offense level is 32** pursuant to United States Sentencing Guidelines ("U.S.S.G.") §§ 2G2.1, 2G2.2 to account for the Defendant's conduct of attempting to cause a minor to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct, U.S.S.G. § 2G2.2(c).

b. This Office and the Defendant further agree that a **two-level enhancement** applies pursuant to U.S.S.G. § 2G2.1(b)(1)(B) because the offense conduct involved a minor older than twelve years but younger than sixteen years.

c. This Office and the Defendant further agree that an additional **two-level enhancement** applies pursuant to U.S.S.G. § 2G2.1(b)(6)(B) because the offense conduct involved the use of a computer to persuade, induce, and entice a minor to engage in sexually explicit conduct.

d. Thus, the Office and the Defendant anticipate an **offense level of 36** before accounting for relevant conduct or any reduction for acceptance of responsibility.

### Relevant Conduct
### (Two Instances of Attempted Possession and One Instance of Enticement)

e. **Offense Level:** The parties stipulate and agree that pursuant to U.S.S.G. § 1B1.2(c), the Defendant's relevant conduct set forth in the stipulated factual basis (Attachment A) constitutes two separate violations of Attempted Possession of Child Pornography, in violation of 18 U.S.C. §§ 2252A(a)(5)(B), 2252(b)(2), 2256(8)(A) and one additional and separate violation of Use of Interstate Commerce Facilities to Entice a Minor to Engage in Sexual Activity, 18 U.S.C. § 2422(b).

f. This Office and the Defendant agree and stipulate that the applicable offense level for each of the two separate violations of Attempted Possession of Child Pornography is **36** as calculated in Paragraph 7(a) through (d) above.

g. This Office and the Defendant agree and stipulate that the applicable offense level for the additional and separate violation of Use of Interstate Commerce Facilities to Entice a Minor to Engage in Sexual Activity is **32** pursuant to U.S.S.G. § 2G1.3 as set forth below.

    i. Base offense level of **28**. U.S.S.G. § 2G1.3(3).

    ii. Plus a **two-level enhancement** pursuant to U.S.S.G. § 2G1.3(b)(3).

    iii. Plus a **two-level enhancement** pursuant to U.S.S.G. § 2G1.3(b)(4).

## **Grouping and Resulting Offense Level**

h.      **Offenses Do Not Group:** Pursuant to U.S.S.G. § 3D1.2, the Office and the Defendant agree that the offense of conviction and the instances of relevant conduct as agreed and stipulated to are excluded from grouping.

i.      **Combined Offense Level:** Pursuant to U.S.S.G. § 3D1.4 the Office and the Defendant agree that the combined offense level, prior to any reduction for acceptance of responsibility, is **39**, calculated as follows:

| GROUP | OL | UNITS |
|---|---|---|
| Attempted Production 9/14/2018 | 36 | 1 |
| Attempted Production 10/10/2018 | 36 | 1 |
| Enticement 9/12/2018 through 10/10/2018 | 32 | 1 |
| **TOTAL** | **36+3** | **39** |

j.      This Office does not oppose a **2-level** reduction in the Defendant's adjusted offense level pursuant to U.S.S.G. § 3E1.1(a) based upon the Defendant's apparent prompt recognition and affirmative acceptance of personal responsibility for the Defendant's criminal conduct. This Office agrees to make a motion pursuant to U.S.S.G. § 3E1.1(b) for an additional **1-level** decrease in recognition of the Defendant's timely notification of the Defendant's intention to enter a plea of guilty. This Office may oppose any adjustment for acceptance of responsibility under U.S.S.G. § 3E1.1(a), and may decline to make a motion pursuant to U.S.S.G. § 3E1.1(b), if the Defendant: (i) fails to admit each and every item in the factual stipulation; (ii) denies involvement in the offense; (iii) gives conflicting statements about the Defendant's involvement in the offense; (iv) is untruthful with the Court, this Office, or the United States Probation Office; (v) obstructs or attempts to obstruct justice prior to sentencing; (vi) engages in any criminal conduct between the date of this Agreement and the date of sentencing; (vii) attempts to withdraw the plea of guilty; or (viii) violates this Agreement in any way.

k.      Thus, after accounting for acceptance of responsibility, as described in paragraph 6(e), the Office and the Defendant anticipate an **offense level of 36.**

8.      There is no agreement as to the Defendant's criminal history and the Defendant understands that the Defendant's criminal history could alter the Defendant's offense level. Specifically, the Defendant understands that the Defendant's criminal history could alter the final offense level if the Defendant is determined to be a career offender or if the instant offense was a part of a pattern of criminal conduct from which the Defendant derived a substantial portion of the Defendant's income.

Rev. August 2018

6

9.     Other than as set forth above, no other offense characteristics, sentencing guidelines factors, potential departures or adjustments set forth in the United States Sentencing Guidelines are in dispute or will be raised in calculating the advisory guidelines range.

## Obligations of the Parties

10.     At the time of sentencing, this Office and the Defendant reserve the right to advocate for a reasonable sentence, period of supervised release, and/or fine considering any appropriate factors under 18 U.S.C. § 3553(a). This Office and the Defendant reserve the right to bring to the Court's attention all information with respect to the Defendant's background, character, and conduct that this Office or the Defendant deem relevant to sentencing, including the conduct that is the subject of any counts of the Information, and including any other criminal conduct. *See* 18 U.S.C. § 3661. At the time of sentencing, this Office will move to dismiss any open counts against the Defendant.

## Waiver of Appeal

11.     In exchange for the concessions made by this Office and the Defendant in this Agreement, this Office and the Defendant waive their rights to appeal as follows:

a.     The Defendant knowingly waives all right, pursuant to 28 U.S.C. § 1291 or any other statute or constitutional provision, to appeal the Defendant's conviction on any ground whatsoever. This includes a waiver of all right to appeal the Defendant's conviction on the ground that the statute(s) to which the Defendant is pleading guilty is unconstitutional, or on the ground that the admitted conduct does not fall within the scope of the statute(s), to the extent that such challenges legally can be waived.

b.     The Defendant and this Office knowingly and expressly waive all rights conferred by 18 U.S.C. § 3742 to appeal whatever sentence is imposed (including any term of imprisonment, fine, term of supervised release, or order of restitution) for any reason (including the establishment of the advisory sentencing guidelines range, the correctness of any determination regarding any provision of the advisory sentencing guidelines; the determination of the Defendant's criminal history, the weighing of the sentencing factors, and any constitutional challenges to the calculation and imposition of any term of imprisonment, fine, order of forfeiture, order of restitution, and term or condition of supervised release).

c.     The Defendant waives any and all rights under the Freedom of Information Act relating to the investigation and prosecution of the above-captioned matter and agrees not to file any request for documents from this Office or any investigating agency.

## Forfeiture

12.     The Defendant understands that the Court may enter an Order of Forfeiture as part of the Defendant's sentence, and that the Order of Forfeiture may include assets directly traceable to the offense, substitute assets, and/or a money judgment equal to the value of the property derived from, or otherwise involved in, the offenses.

13.     Specifically, but without limitation on the Government's right to forfeit all property subject to forfeiture as permitted by law, the Defendant agrees to forfeit to the United States all of the Defendant's right, title, and interest in the following items that the Defendant agrees constitute money, property, and/or assets derived from or obtained by the Defendant as a result of, or used to facilitate the commission of, the Defendant's illegal activities:   one Red iPhone, Model NRRR2LL/A, Serial No. C8QWHN72JWF5.

14.     The Defendant agrees to consent to the entry of orders of forfeiture for the property described herein and waives the requirements of Federal Rules of Criminal Procedure 11(b)(1)(J), 32.2, and 43(a) regarding notice of the forfeiture in the charging instrument, advice regarding forfeiture during the change of plea hearing, announcement of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment.

15.     The Defendant agrees to assist fully in the forfeiture of the above property. The Defendant agrees to disclose all assets and sources of income, to consent to all requests for access to information related to assets and income, and to take all steps necessary to pass clear title to the forfeited assets to the United States, including executing all documents necessary to transfer such title, assisting in bringing any assets located outside of the United States within the jurisdiction of the United States, and taking whatever steps are necessary to ensure that assets subject to forfeiture are made available for forfeiture.

16.     The Defendant waives all challenges to any forfeiture carried out in accordance with this Agreement on any grounds, including any and all constitutional, legal, equitable, statutory, or administrative grounds brought by any means, including through direct appeal, habeas corpus petition, or civil complaint. The Defendant will not challenge or seek review of any civil or administrative forfeiture of any property subject to forfeiture under this Agreement, and will not assist any third party with any challenge or review or any petition for remission of forfeiture.

## Defendant's Conduct Prior to Sentencing and Breach

17.     Between now and the date of the sentencing, the Defendant will not engage in conduct that constitutes obstruction of justice under U.S.S.G. § 3C1.1; will not violate any federal, state, or local law; will acknowledge guilt to the probation officer and the Court; will be truthful in any statement to the Court, this Office, law enforcement agents, and probation officers; will cooperate in the preparation of the presentence report; and will not move to withdraw from the plea of guilty or from this Agreement.

18.     If the Defendant engages in conduct prior to sentencing that violates the above paragraph of this Agreement, and the Court finds a violation by a preponderance of the evidence, then: (i) this Office will be free from its obligations under this Agreement; (ii) this Office may make sentencing arguments and recommendations different from those set out in this Agreement, even if the Agreement was reached pursuant to Rule 11(c)(1)(C); and (iii) in any criminal or civil proceeding, this Office will be free to use against the Defendant all statements made by the Defendant and any of the information or materials provided by the Defendant, including statements, information, and materials provided pursuant to this Agreement, and statements made during proceedings before the Court pursuant to Rule 11 of the Federal Rules of Criminal

Procedure. A determination that this Office is released from its obligations under this Agreement will not permit the Defendant to withdraw the guilty plea. The Defendant acknowledges that the Defendant may not withdraw the Defendant's guilty plea—even if made pursuant to Rule 11(c)(1)(C)—if the Court finds that the Defendant breached the Agreement.

## Court Not a Party

19.     The Court is not a party to this Agreement. The sentence to be imposed is within the sole discretion of the Court. The Court is not bound by the Sentencing Guidelines stipulation in this Agreement. The Court will determine the facts relevant to sentencing. The Court is not required to accept any recommendation or stipulation of the parties. The Court has the power to impose a sentence up to the maximum penalty allowed by law. If the Court makes sentencing findings different from those stipulated in this Agreement, or if the Court imposes any sentence up to the maximum allowed by statute, the Defendant will remain bound to fulfill all of the obligations under this Agreement. Neither the prosecutor, defense counsel, nor the Court can make a binding prediction, promise, or representation as to what guidelines range or sentence the Defendant will receive. The Defendant agrees that no one has made such a binding prediction or promise.

## Entire Agreement

20.     This letter, together with the Sealed Supplement, constitutes the complete plea agreement in this case. This letter, together with the Sealed Supplement, supersedes any prior understandings, promises, or conditions between this Office and the Defendant. There are no other agreements, promises, undertakings, or understandings between the Defendant and this Office other than those set forth in this letter and the Sealed Supplement. No changes to this Agreement will be effective unless in writing, signed by all parties and approved by the Court.

If the Defendant fully accepts each and every term and condition of this Agreement, please sign and have the Defendant sign the original and return it to me promptly.

Very truly yours,

Robert K. Hur
United States Attorney

Daniel A. Loveland, Jr.
Paul E. Budlow
Assistant United States Attorney

I have read this Agreement, including the Sealed Supplement, and carefully reviewed every part of it with my attorney. I understand it and I voluntarily agree to it. Specifically, I have reviewed the Factual and Advisory Guidelines Stipulation with my attorney and I do not wish to change any part of it. I am completely satisfied with the representation of my attorney.

8/15/19
Date

Mark David Franklin

I am the Defendant's attorney. I have carefully reviewed every part of this Agreement, including the Sealed Supplement with the Defendant. The Defendant advises me that the Defendant understands and accepts its terms. To my knowledge, the Defendant's decision to enter into this Agreement is an informed and voluntary one.

8/15/19
Date

Brendan Hurson, Esq.

Rev. August 2018

10

## **ATTACHMENT A**

### **STIPULATION OF FACTS**

*The undersigned parties stipulate and agree that the following facts are true and accurate, and that if this case had proceeded to trial, this Office would have proven the following facts beyond a reasonable doubt. The undersigned parties also stipulate and agree that the following facts do not encompass all of the evidence that would have been presented had this matter proceeded to trial.*

During the course of the offense conduct to which he has pleaded guilty, Mark David Franklin was a 43-year old male who resided in Ellicott City, Maryland. As detailed below, between September 7, 2018 and October 10, 2018, Franklin used online applications to attempt to induce an individual whom he believed to be a 13 year old female to take photographs of the individual engaging in sexually explicit conduct and send those images to Franklin using online social networks. Additionally, on October 10, 2018, Franklin traveled from his home in Ellicott City to Frederick, Maryland, with the intent to engage in sex acts with the 13 year old female and to create recordings in the form of photographic images of those sex acts between himself and the 13 year old female.

Franklin owned and used a "Skout" account, for which the user/display name was "Mark." Skout is an online dating and chatting application. Franklin was also the user and owner of a "Kik" account with the username "mastermark1975" and the profile display name of "Mark Franklin". According to the Kik company, its online application is a chatting and discussion platform "built especially for teens."

From on or about September 7, 2018 through in or about October 2018, Franklin exchanged messages with an undercover Federal Bureau of Investigation (FBI) Special Agent with a listed display name of "Molly Love" and "Mollyda Love". For the remainder of this stipulation, this individual will be referred to as "Molly".

The Defendant first exchanged messages with Molly on Skout, and then later on Kik.

On or about September 7, 2018, Molly created a Skout account. That account featured a picture of a young-looking female and listed an age of 18 years. Very soon after the account was created, the Defendant sent Molly a message, which included:

"divorced dad in ellicott city md 6-6 brown hair sexy brown eyes mustache goat tee 8 tattoos! I am a hopeless romantic, loyal, honest, good hearted, wacky sence of humor, sweet, caring, out going, open minded, love out doors, beach, ocean, travel, music, wine, wineries, movies, poetry, and anything fun".

Within the very first conversation between Franklin and Molly, Molly explained that she was in high school and was in the ninth grade. To this, Franklin responded, "Oh ok do ur 14 cool." The next day, Franklin asked Molly what grade Molly was in, to which Molly replied that she was a freshman.

Rev. August 2018

11

On or about September 10, 2018, Franklin began soliciting Molly for photographs of Molly. On or about September 11, 2018, Franklin and Molly discussed communicating on a platform other than Skout, and the two moved to Kik. Molly logged into a Kik account that featured a similar user/display name to the user/display name of Molly's Skout account and featured a picture of the same young-looking female as Molly's Skout account. Franklin then sent Molly a message saying it was "mark from shout", and from that point forward, Franklin and Molly communicated on the Kik platform.

Later that day on Kik, Franklin sent Molly a shirtless picture of himself wearing blue Sesame Street underwear and another picture of himself wearing thong underwear. Franklin said he could not wait to see pictures of Molly.

On September 12, 2018, Franklin sent Molly numerous messages, including:

- "I am out to get shower I take some picks for you"
- "Trade pics lol"
- "Hey sexy what's up besides me for you"
- "Just got out of shower took pic for you love to see more pics of you sexy"
- "Are you a virgin? Doesn't matter to me"

On September 13, 2018, Molly told Franklin that she was a virgin. Franklin sent Molly numerous messages, including:

- "I get to be teacher You know blow jobs are and 69"
- "You can practice on me"
- "Watch porn to learn lol"
- "I teach you maybe we video on here some time"

On September 13, 2018, Franklin sent Molly a link to a pornographic website. To this, Molly responded, "I'm only 13 though. R they my age?" After this, Franklin sent numerous messages, including,

- "They are older because to do it on line you have to be 18 but the concepts are the same search teen porn"
- "When u out of school", "For the day"
- "Yea but we got to be very careful though the age thing"
- "We can do it just have keep it secrete"
- "Once we get you comfortable with you and your body is first"

On September 14, 2018, Franklin asked Molly for pictures that were "topless or full nude what ever". On that same day, Franklin also asked Molly "What color undies" she had on and explained, "It what's under them is more sexier". Franklin said he had "to see check it out" and said, "So see pic of it later". Later that day, Franklin asked what Molly was doing, and after being told Molly was getting ready for a bath, Franklin said,

- "Yeah u going pi", "Pic and play with your s of", "Yourself".

On September 16, 2018, Franklin sent Molly a picture of an erect penis, which he described as "Me now".

On or about September 20, 2018, Franklin described the photographs he wished to take of Molly when they met as "you naked you with my big one in your mouth and others." Later on September 20, 2018, Molly asked Franklin to obtain for her a teddy bear to help calm her nerves during their sexual encounter and Franklin agreed.

On or about September 26, 2018, and on or about September 30, 2018, Franklin mentioned in messages that he had obtained the teddy bear.

Other messages that Franklin sent to Molly include, but are not limited to, the following:

- "Yea like dildos vibrators or other objects like cucumbers or banana or just their fingers hand"
- "I know your body is so sexy and I can't wait to see it"
- "Well after you play with ur self and stretch your self. That might be after you have experience lol"
- "But it may cause little pain and I might bleed a little. Your v has a small skink like piece that is to be separated the first time u have sex or stretch it"
- "Yea that's why you do when ur in the bath room with the door locked and MAKE SURE THAT PHONE IS ON SILENT NO RINGER OR VOLUME THRN NO ONE WILL HEAR YOU OR LNOW"
- "maybe at one point when get ur self wet you might like the taste lol"
- "Yea JUST MAKE SURE WHEN YOU DO PICS ON BATHROOM. DOOR IS LOCKED AND PHONE IS ON NO SOUND AT ALL"
- "Glad one day we will get it in all 3 of your openings"
- "No the basics be fingering blow jobs facials to start"
- "Ok cool You can practice sucking swallowing and facial or more"
- "Ok cool maybe I finger you eat you and you can eat ass lol"

During their exchange of messages, including but not limited to messages exchanged on or about September 12, 16, 20, and 30, 2018, Molly and Franklin discussed meeting in person for sexual acts. Franklin encouraged and enticed Molly to meet up for sexual acts. Franklin and Molly eventually agreed to meet on October 10, 2018, at The Retreat at Market Square apartment complex in Frederick, Maryland.

Rev. August 2018

13

On or about October 10, 2018, Franklin drove from his residence in Ellicott City, Maryland, to The Retreat at Market Square apartment complex in Frederick, Maryland. Franklin was arrested while in possession of nine condoms, a teddy bear, two blankets, and a towel.

Rev. August 2018

SO STIPULATED:

Daniel A. Loveland, Jr.
Paul E. Budlow
Assistant United States Attorney

Mark David Franklin
Defendant

Brendan Hurson, Esq.
Counsel for Defendant